United States District Court
Southern District of Texas
**ENTERED**
January 31, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re JAI LEE MCCARTHY, § | |
| § | |
| Debtor. § | |
| § | CIVIL ACTION NO. 4:21-CV-3685 |
| § | |
| PROPEL FINANCIAL SERVICES, § | BANKRUPTCY CASE NO. 19-34153 |
| § | |
| Appellant. § | |

## MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The appellant is an oversecured creditor whose application for attorney's fees and expenses under 11 U.S.C. § 506(b) ("Section 506(b)") was denied by the bankruptcy court. This appeal is virtually indistinguishable from a recent appeal heard by the undersigned judge involving the same appellant, the same issues, and the same bankruptcy judge. *See* Southern District of Texas civil case 4:21-CV-1823. As it did in the earlier case, the Court **AFFIRMS** the bankruptcy court's judgment.

**I.    BACKGROUND**

The appellant, Propel Financial Services ("Propel"), is an oversecured creditor of the bankruptcy debtor, Jai Lee McCarthy ("McCarthy"). McCarthy filed a Chapter 13 bankruptcy petition in July of 2019, and the Chapter 13 plan was confirmed on November 20, 2019. (Dkt. 2 at pp. 1, 6).[1]

---

[1] Docket citations using the abbreviation "Dkt." refer to this Court's docket in the appeal. Docket citations using the abbreviation "Bankr. Dkt." refer to the bankruptcy court's docket in the underlying bankruptcy proceeding.

On May 19, 2020, Propel filed a motion to substitute counsel, and that motion was granted on May 20, 2020. (Bankr. Dkt. 69; Bankr. Dkt. 70). A year and three months later, on August 9, 2021, Propel filed an application for attorney's fees and expenses under Section 506(b). (Dkt. 2 at pp. 45–53). The application sought a total of $2,481.10. (Dkt. 2 at p. 53). The fees and expenses sought by Propel related almost entirely to services that had been rendered by Propel's first counsel nearly two years earlier, in the months leading up to the confirmation of McCarthy's Chapter 13 plan. One $35.00 expense labeled "Exhibit-Fee Statement" was dated April 27, 2020; and Propel's second counsel billed $350.35 for the creation of the fee application itself. (Dkt. 2 at pp. 56–58). Apart from those entries, the billed services were rendered between September and November of 2019. (Dkt. 2 at pp. 56–58).

The bankruptcy court denied Propel's fee application as untimely, explaining that it used the deadline provided in Federal Rule of Bankruptcy Procedure 3002.1 ("Rule 3002.1") as a yardstick for determining when a fee application has been filed within a reasonable time. (Dkt. 2 at pp. 74–76). The bankruptcy court explained that Rule 3002.1 requires that a fee application be served within 180 days after the date on which the fees, expenses, or charges are incurred and that, "[i]n this instance, the [fee application] was served almost two years after the first listed charges were incurred, and a year and a half after the last listed charges." (Dkt. 2 at p. 74). The bankruptcy court concluded that "the allowance of [Propel's] claim for attorney's fees w[ould] have an effect on the [bankruptcy] estate because the allowance of [Propel's] fees w[ould] decrease the unencumbered value available from the collateral to satisfy unsecured claims or equity." (Dkt. 2 at p. 76). The

bankruptcy court provided a succinct summary of its rationale: "The Court finds that a timely application for fees protects the fresh start of the debtor, and that this application is not timely." (Dkt. 2 at p. 76).

Propel filed a motion for reconsideration, and the bankruptcy court held a hearing. (Bankr. Dkt. 87; Bankr. Dkt. 95). The bankruptcy court asked Propel's counsel why he was filing applications in multiple Southern District of Texas bankruptcies that requested fees and expenses for legal services that had been rendered years earlier:

> THE COURT: Yeah. And so I guess my question becomes for you, obviously, if Propel was servicing this debt as far as— as early as 2017, when it was sending out these notices, why is it that we're seeing after the transfer of the claim, a fair number of these applications that are being filed in cases that have already been pending like this case for several years or longer?

Bankr. Dkt. 95 at p. 5.

Propel's counsel answered by stating that he had inherited over 100 Propel files from his predecessor. (Bankr. Dkt. 95 at p. 6). He attributed the time lapse between the rendition of legal services and the fee applications in part to his need to comprehensively examine the inherited files and in part to uncertainty among Propel's prior attorneys regarding fee-application procedure in the Southern District of Texas bankruptcy courts:

> [PROPEL'S COUNSEL:] When I inherited these files, I audited every one of them to make sure that a fee application either had been filed or would be filed. And irrespective of whether the application is three years late, four years late, or one year late, I file it because I believe that Southern District rules require that we file fee applications in this case that were in Chapter 13 cases.

> We have not chosen to ever challenge the Southern District Bankruptcy Courts on whether fee applications are in fact required. We choose to file them because there is precedent in other Southern District cases that suggest we are supposed to file them.
>
> So the timing is simply a function of my review of each case file. There were about, call it 100, 150 files, and I've gone through every single one of them to make sure that unless the case was dismissed, a fee application was filed.
>
> There is, of course, attention in every Chapter 13 about when to file it, when you really think you're done with the work. Some cases, as Your Honor knows, actually a small—not insubstantial minority of cases dismissed even after confirmation. So we don't want to overwork the file and add additional fees for the fee app if the case is sort of on the margins. But I freely admit that although we're not bound by a specific rule, the better practice would be to file the sooner than most of them are not.

Bankr. Dkt. 95 at pp. 5–6.

After Propel's counsel gave his explanation, the bankruptcy judge responded, "And I think that I would have less concern if [the fee applications] were filed shortly after the plan was confirmed and your work was, in my words, basically done on a case." (Bankr. Dkt. 95 at p. 6).

In a written order, the bankruptcy court denied Propel's motion for reconsideration. (Bankr. Dkt. 92). The bankruptcy court reiterated its earlier rationale: "The Court finds that a timely application for fees protects the fresh start of the debtor, and that this application is not timely." (Bankr. Dkt. 92 at p. 3). The bankruptcy court further explained that:

> the fee application was filed more than 469 days after the last listed charges occurred. This Court has previously declined to grant fees when the time period for which fees are requested are well past 180 days. In reaching this conclusion, the Court looked at cases where fee applications were barred when not submitted within 30 to 45 days after completion of legal services, Federal Rule of Civil Procedure 54(d)(2)(B) requiring a motion for attorney's fees within 14 days after entry of judgment, and [Rule] 3002.1 requiring notice within 180 days.
>
> Bankr. Dkt. 92 at p. 3 (footnotes omitted).

In its appeal to this Court, Propel argues that "the most fundamental requirement of due process has not been met" because it "had no advance notice of any deadline for [its fee] Application[.]" (Dkt. 9 at pp. 9–10). Propel further contends that the timing of its fee application could not create any prejudice for McCarthy because it "sought $2,481.10, an amount far less than the Unsecured Creditors' Pool." (Dkt. 9 at p. 10) (record citation omitted). Since "any amounts awarded on the [fee] Application reduce distributions to unsecured creditors . . . irrespective of when the [fee] Application is filed or allowed[,]" Propel's argument continues, the timing of Propel's fee application could not prejudice McCarthy because "the Unsecured Creditors' Pool would have been reduced by exactly the same amount if the [fee] Application had been filed earlier." (Dkt. 9 at pp. 10–11).

No party filed a responsive brief.

## II.    LEGAL STANDARDS

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy

court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2).[2]

Section 506(b) authorizes oversecured creditors to recover interest and reasonable fees and expenses that accrue between the petition date and plan confirmation. *In re Padilla*, 379 B.R. 643, 654 (Bankr. S.D. Tex. 2007). "To maximize equality among creditors, courts closely scrutinize oversecured creditors' requests for post-petition fees, expenses and interest. Courts require oversecured creditors to prove that their claims meet [Section] 506(b)'s reasonableness requirements." *Id.*; *see also In re Tate*, 253 B.R. 653, 666 n.8 (Bankr. W.D.N.C. 2000) ("[A]llowing fees to a particular creditor is the exception and not the norm in a bankruptcy case. Such fee requests are to be strictly construed, and the burden is on the creditor to show entitlement and reasonableness."). Reasonableness of fees and expenses is a factual question to be determined on a case-by-case basis "in light of what was reasonable at the time." *In re Raygoza*, 556 B.R. 813, 823–24 (Bankr. S.D. Tex. 2016) (quotation marks omitted); *see also In re Hight*, 393 B.R. 484, 506 (Bankr. S.D. Tex. 2008).

A fee determination under Section 506(b) is a mixed question of law and fact. *In re 804 Congress, L.L.C.*, 756 F.3d 368, 377 (5th Cir. 2014). The bankruptcy judge must: (1) determine the nature and the extent of the services supplied by the attorney with reference

---

[2] "While orders denying attorney's fees are typically not 'final' for purposes of appeal under 28 U.S.C. § 158(a)(1), such orders may be 'final' if they are the final fee application submitted by counsel in a case." *In re Dewey*, 237 B.R. 783, 787 n.3 (10th Cir. BAP 1999). McCarthy's Chapter 13 plan was confirmed long before Propel made its attorney's fee application, and it is clear from the record that the appealed-from orders denied Propel's final application. (Dkt. 2 at p. 35). The Court concludes that it has jurisdiction over this appeal.

to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the findings and reasons upon which the award is based. *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1058 (5th Cir. 1986), *overruled in part by Stern v. Marshall*, 564 U.S. 462 (2011); *see also Raygoza*, 556 B.R. at 823. The Court reviews the applicability of Section 506(b) de novo but reviews the bankruptcy judge's determination of reasonableness for abuse of discretion. *804 Congress*, 756 F.3d at 377. When evaluating Section 506(b) fee applications, bankruptcy courts have both "broad discretion" and "broad equity powers[.]" *Hudson Shipbuilders*, 794 F.2d at 1055–56, 1058.

### III. ANALYSIS

The Court concludes that the bankruptcy court did not abuse its discretion or exceed the scope of its broad equity powers when it rejected Propel's fee application as untimely. Other courts examining attorney's fee applications in bankruptcy cases have observed that "the more time that elapses between an attorney's work and the fee request, the harder it becomes for a court to assess the reasonableness of the request." *In re Silver Spring Family Medical Center, LLC*, 550 B.R. 286, 292 (D. Md. 2016). "[C]ommon sense and judicial economy favor a timely motion for attorneys' fees so the Court can review the request close in time to the underlying substantive legal work performed and to avoid lumping work on several [discrete] legal matters into a single fee application." *In re Schugg*, No. 07-1962, 2009 WL 1635379, at *2–3 (D. Ariz. June 11, 2009). At least one bankruptcy court has stated the same rule of thumb employed by the bankruptcy court in this case: it refused to grant fee applications for "extremely stale time," defined as legal services performed more than six months before the fee application was filed. *In re Newman*, 270 B.R. 845, 848–49

(Bankr. S.D. Ohio 2001) ("[C]ommensurate with the need for the filing of prompt fee applications, extremely stale time, which this Court deems to be more than six months old, will generally be noncompensable. . . . To the extent that the fee applications request compensation for services completed prior to six months before the fee application filing date, the fee applications are also DENIED on that ground.").

Propel filed its fee application in August of 2021, nearly two years after McCarthy's Chapter 13 plan was confirmed in November of 2019. Nearly all of the billed services were rendered before plan confirmation, with the two exceptions being a $35.00 expense from April of 2020 and the creation of the fee application itself. By any standard, Propel's fee application presents extremely stale time; and Propel has not offered any compelling explanation for the delay in filing it. At the hearing on his motion for reconsideration, Propel's new counsel attributed the lateness of his fee application in part to uncertainty among Propel's prior attorneys regarding fee-application procedure in the Southern District of Texas bankruptcy courts and in part to his need to comprehensively examine the 100 to 150 inherited Propel files. However, Propel did not file its fee application in this case until fifteen months after it hired its new counsel, and its proffered justifications fail to excuse such a long delay.

Propel has not established that the bankruptcy court overstepped the bounds of its broad discretion and broad equity powers. The bankruptcy court acted well within those bounds when it rejected Propel's fee application as untimely, particularly since the extreme staleness of the billed time was compounded by the fact that Propel's current counsel sought to recover fees for the work of a different attorney with whom he was not

professionally affiliated. Propel's explanation for the timing of its fee application is insufficient to establish that the bankruptcy court acted improperly. Furthermore, given the bankruptcy court's broad discretion and equity powers and oversecured creditors' "severely limited" right to recover fees under Section 506(b), *In re Padilla*, 379 B.R. at 654, the Court is not persuaded by Propel's contention that the bankruptcy court lacked the power to enforce a presumptive 180-day cut-off for the timeliness of fee applications without giving prior formal notice of that cut-off. *Cf. In re Newman*, 270 B.R. at 848–49 (creating a presumptive six-month cut-off for the timeliness of fee applications and enforcing that cut-off in the same opinion).

## IV.   CONCLUSION

The Court **AFFIRMS** the bankruptcy court's judgment.

SIGNED at Houston, Texas, on January 31, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE